# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00165-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    GREGORY LOPEZ,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Alecia L. Riewerts, Assistant United States Attorney for the District of Colorado, and the defendant, Gregory Lopez, personally and by counsel, David Kraut, Assistant Federal Public Defender, submit the following Plea Agreement.

## I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the Court. Because the government is agreeing to dismiss two counts of the Indictment at the time of sentencing, the defendant will be permitted to withdraw his plea of guilty if this Court rejects this plea agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

COURT EXHIBIT
1

## A. **Defendant's Obligations**

### 1. **Count of Conviction**

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 2251(a) and (e), Production of Child Pornography, and Count Three of the Indictment charging a violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), Transportation of Child Pornography. The defendant also agrees to admit the Forfeiture Allegation contained in the Indictment.

### 2. **Sentencing Position**

As part of this agreement, the defendant agrees to jointly recommend a term of supervised release of 20 years to follow the defendant's term of imprisonment.

### 3. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum penalty provided in the statutes of conviction;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 44; or

(3) the government appeals the sentence imposed.

If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

### 3. Defendant's Abandonment of Right, Title, and Claim to Seized Property

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant and currently in the custody and/or control of Homeland Security Investigations (HSI), was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically one LG LM-X320MA cellular telephone with IMEI 358335101997409, to the United States of America with the understanding and consent that HSI, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

### 4. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to, one LG LM-X320MA cellular telephone with IMEI 358335101997409. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## B. **Government's Obligations**

### 1. **Dismissal of Charges and Additional Charges**

If the defendant enters an unconditional plea of guilty to Counts One and Three of the Indictment and otherwise fulfills all obligations outlined above, the government will

4

dismiss Counts Two and Four of the Indictment at the time of sentencing and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

### 2. Sentencing Position

Provided that the guideline range is calculated consistent with the estimated range contained in this agreement, the government agrees to recommend a sentence of no more than 450 months (37.5 years) imprisonment. As part of this agreement, the government agrees to jointly recommend a term of supervised release of 20 years to follow the defendant's term of imprisonment. Should Probation or the Court determine that the guideline range is lower, the government reserves its ability to seek an upward variance to the extent necessary to achieve a sentence consistent with the sentencing range calculated in this agreement.

### 3. Acceptance of Responsibility

The government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). If the defendant does not engage in prohibited conduct or otherwise implicate USSG § 3C1.1, the government agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the crime of Production of Child Pornography, 18 U.S.C. § 2251(a) and (e), are as follows:

*One*:  The defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two*:  That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*:  That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or that the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[1]

The parties agree that the elements of the crime of Transportation of Child Pornography, 18 U.S.C. § 2252A(a)(1), are as follows:

*One:*  The defendant knowingly mailed, transported or shipped child pornography;

*Two:* That the child pornography was mailed, transported or shipped using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer;

_____

[1] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.84 [modified]. The Tenth Circuit does not have a pattern instruction for this crime.

*Three:* That when the defendant mailed, transported or shipped the child pornography, the defendant knew it was child pornography.[2]

"Minor" means any person under the age of eighteen years.[3]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[4]

"Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[5]

"Sexually explicit conduct" means actual or simulated:

1.  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2.  bestiality; or

3.  masturbation; or

4.  sadistic or masochistic abuse; or

---

[2] 18 U.S.C. § 2252A(a)(1); Fifth Circuit Criminal Pattern Jury Instruction 2.85C [modified]. The Tenth Circuit does not have a pattern instruction for this crime.
[3] 18 U.S.C. § 2256(1).
[4] 18 U.S.C. § 2256(5).
[5] 18 U.S.C. § 2256(8)(A).

5.   lascivious exhibition of the anus, genitals, or pubic area of any person.[6]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2251(a) and (e), Production of Child Pornography, is not less than 15 years imprisonment, not more than 30 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2251(a) and (e). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251(a), the term of supervised release is not less than 5 years and up to a term of life. Defendant will be required to pay a $100 special assessment fee.

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, or under 18 U.S.C. § 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than $250,000 fine, or both; with two such convictions, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 35 years nor more than life imprisonment, not more than a $250,000 fine, or both. Defendant will be required to pay a $5,000 special assessment unless the Court finds that the defendant is indigent. 18 U.S.C. § 3014. Defendant will

---

[6] 18 U.S.C. § 2256(2)(A).

also be required to pay a special assessment of no more than $50,000 for his conviction for child pornography production as defined by 18 U.S.C. § 2259(c)(1), which includes offenses under 18 U.S.C. § 2251(a). 18 U.S.C. § 2259A(a)(3).

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2252A(a)(1), Transportation of Child Pornography, is not less than 5 years imprisonment, not more than 20 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2252A(b)(1). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2252A(a)(1), the term of supervised release is not less than 5 years and up to a term of life. Defendant will be required to pay a $100 special assessment fee.

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, Title 18 section 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children, the penalty for a violation of 18 U.S.C. § 2252A(a)(1) is not less than 15 years nor more than 40 years imprisonment, not more than a $250,000 fine, or both. Defendant will be required to pay a $5,000 special assessment unless the Court finds that the defendant is indigent. 18 U.S.C. § 3014. Defendant will also be required to pay a special assessment of no more than $35,000 for his conviction for trafficking in child pornography as defined by 18 U.S.C. §

2259(c)(3), which includes offenses under 18 U.S.C. § 2252A(a)(1).  18 U.S.C. §
2259A(a)(2).

## IV.  COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the
right to possess firearms, vote, hold elected office, and to serve on a jury.  If the
defendant is not a United States citizen, this conviction will result in the defendant's
removal from the United States once he has completed any sentence of imprisonment.

### A.  Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or
supervised release may result in a separate prison sentence and additional supervision.
If a condition of release is violated, the defendant may be sentenced to up to 5 years
without credit for pre-release imprisonment or time previously served on post-release
supervision.

### B.  Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex
Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C.
§ 3583(d), upon his release from prison and as a condition of his supervised release, if
any, he will be subject to federal and state sex offender registration requirements, and
that those requirements may apply throughout his life.  The defendant understands he
must register as a sex offender and must keep the registration current with the state sex
offender registration agency in each of the following jurisdictions: where he was
convicted, where he resides, where he is employed, and where he is a student.  The

defendant understands that the requirements for registration include providing his name, residence address, the names and addresses of any places where he is or will be an employee or a student, and information relating to intended travel outside the United States, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(c)(2) and (4) as may be proved by the government or stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense to which defendant is pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c)(4), and the term "full amount of the victims' losses" is defined in 18 U.S.C.

11

§ 2259(c)(2). Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Defendant understands full restitution will be ordered regardless of defendant's financial resources. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. Defendant further agrees to comply with any restitution order entered at the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V. <u>STIPULATION OF FACTS</u>

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18

U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

On April 29, 2020, an HSI Special Agent working in an undercover capacity in Philadelphia, Pennsylvania (hereinafter "UCA") was conducting online investigations related to child exploitation activities involving the darknet. The UCA, utilizing a computer device connected to the Internet, visited a known darknet advertising website. This darknet advertising website is similar to "Craigslist" in that individuals can anonymously post messages advertising items or services for sale. Most often, the services and/or items listed on this darknet advertising site are illicit items, to include child exploitation materials. This darknet advertising website is only accessed utilizing a special Internet browser called The Onion Router (TOR).

TOR was originally designed, implemented, and deployed as a project of the U.S. Naval Research Laboratory for the primary purpose of protecting government communications. It is now available to the public at large. The TOR network is available to Internet users; it is designed specifically to facilitate anonymous

13

communication over the Internet.  In order to access the TOR network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the network's administrators, or downloading a publicly-available third-party application.[7]  Using the TOR network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location.  Because of the way the TOR network routes communication through other computers, traditional IP identification techniques are not viable. Websites that are accessible only to users within the TOR network can also be set up within the TOR network.

At approximately 6:20pm on April 29, 2020, the UCA observed an advertisement on the darknet advertising website which was titled "cp".[8]  The posting advertised "Boy porn new set 7yo boy good anal bitcoin original brand new set 20 usd contact "DEFENDANT EMAIL ACCOUNT #1".[9]

The UCA asked the individual utilizing the account, later identified as the defendant, what the boy looked like and if a preview could be provided. The defendant responded by providing the UCA with a .gif attachment titled

---

[7] Users may also access the Tor network through so-called "gateways" on the open Internet; however, use of those gateways does not provide users with the anonymizing benefits of the network.
[8] In the context of child exploitation investigations, the term "cp" stands for "child pornography."
[9] The actual names of the defendant's email accounts referenced in the Plea Agreement are known to the defendant and law enforcement.

"20200426_XXXXXX(X).gif."[10] Upon opening the attachment, the UCA observed a series of 40 image files which appeared to involve a minor child's nude buttocks being penetrated by an adult male penis. The UCA also observed that when starting at the first photo and scrolling to the last photo, the clip depicted anal penetration of the then-unidentified minor child. The UCA requested to see the face of the minor child. The defendant advised that he was a new producer and scared to show his face.

The defendant stated that he had a "small set" but was hoping to build. The UCA asked how many were in the set that the defendant offered and how much he was charging. The defendant stated that there were three videos in the small set "fingering and two anal ones" that he would sell for $20 and the full set included two additional videos "finished product the cum finish on his butt" that he would sell for $20 more, in total $40 for the full set of five videos. The defendant stated that "its consensual with sound fucked him pretty good but not balls deep im not a raper".

Between April 29, 2020 and May 6, 2020, the UCA and the defendant communicated about the method of payment for the full set of five videos. The defendant initially stated that he wanted payment in bitcoin however he stated that he was worried about the transaction being reported to the IRS. The UCA requested Venmo as a peer-to-peer payment platform, to which the defendant sent the UCA a Venmo payment request for $40.00. The UCA obtained approval from HSI Philadelphia to conduct a purchase of evidence from the defendant in the amount of $40.00.

---

[10] A portion of the file names in the Plea Agreement have been redacted.

For reasons unknown to the UCA, the $40.00 Venmo payment to the defendant was not successful. The UCA advised the defendant that the transaction was unsuccessful and asked if the defendant had another idea. The defendant subsequently sent a PayPal request to the UCA requesting $40.00. On May 6, 2020, at approximately 7:25pm, the UCA successfully sent $40.00 to the PayPal account provided by the defendant. The defendant subsequently supplied the UCA with five website links to download the videos from the Internet. The UCA successfully downloaded and captured all five videos, each of which depicted the sexual abuse of a minor child, who has been identified as Minor #1. The following is a description of the video files provided to the UCA by the defendant:

a.     A video file titled "20200426_XXXXXX.mp4" is a video file approximately 40 seconds in length. The video file depicts the defendant digitally penetrating the anus of Minor #1. Minor #1 is on his stomach on a brown carpet and a blue pillow.

b.     A video file titled "20200426_XXXXXX.mpg4" is a video file approximately 53 seconds in length. The video file depicts the defendant using his penis to anally penetrate Minor #1. Minor #1 is lying on his stomach on a brown carpet and a blue pillow with a rainbow. A blue dildo can be seen in the video.

c.     A video file titled "20200426_XXXXXX.mp4" is a video file approximately 16 seconds in length. The video file depicts the defendant using his penis to anally penetrate Minor #1. Minor #1 is lying on his stomach on a brown carpet and a blue pillow with a rainbow. A blue dildo can be seen in the video.

d.     A video filed titled "20200426_XXXXXX.mp4" is a video file approximately 1 minute and 9 seconds in length. The video file depicts the defendant using his penis to anally penetrate Minor #1. Minor #1 is lying on his stomach on a brown carpet.

e.     A video file titled "20200426_XXXXXX.mp4" is a video file approximately 36 seconds in length. The video file depicts the defendant

using his penis to anally penetrate Minor #1. Minor #1 is lying on his stomach on a brown carpet.

On May 6, 2020, at approximately 9:47pm, the defendant messaged the UCA and stated that "a small review could go a lone way to a man if you get the chance hopin more to come ya know please dont post anywhere or we cant do business and i wont be able to make more unless ull b bigtime buyer totally diffrent story though".

The UCA received a receipt of payment from PayPal which detailed that the UCA had paid $40 to the PayPal account of Gregory Lopez, email address: "DEFENDANT EMAIL ACCOUNT #2". HSI Philadelphia conducted an open source search of "DEFENDANT EMAIL ACCOUNT #2" which revealed that it was an email address associated with Gregory Lopez in Colorado Springs, Colorado.

During the course of the investigation, it was discovered that special agents in HSI Newark had previous undercover communications with the defendant. HSI Newark advised that the defendant communicated with an undercover law enforcement officer and provided a picture of himself. HSI Newark provided this photo to the UCA in HSI Philadelphia. The photo depicted a white male, possibly Hispanic, wearing a neon green construction shirt, glasses, and facial hair. Upon further review of the photo, a portion of a suspected Colorado driver's license could be seen along with the number "1993".

A search of the Colorado Department of Motor Vehicle revealed Gregory Lopez, DOB XX-XX-1993 with a reported home address in Colorado Springs, Colorado. The photo of the male provided by HSI Newark appeared to be the same individual in the driver's license photo of the defendant.

On May 7, 2020, HSI Colorado Springs and the Colorado Springs Police Department's (CSPD) Internet Crimes Against Children (ICAC) Task Force were contacted by the UCA in HSI Philadelphia. A utilities record check was completed. The records showed Gregory Lopez had an active account at the home address listed on his Colorado driver's license. On the same date, an HSI Special Agent confirmed with the apartment complex's leasing office that Gregory Lopez was on the lease for the address reflected on the defendant's driver's license and in the utilities record check.

On May 7, 2020, a state premises search warrant was authorized to search the defendant's home address in Colorado Springs, in the District of Colorado. The search warrant was executed on that date. The defendant was present at his residence when the search warrant was executed. The defendant agreed to participate in a Mirandized interview. The defendant confirmed his name, date of birth, and his contact email address of "DEFENDANT EMAIL ACCOUNT #2".

The defendant stated that he sold multiple videos on the darknet of himself molesting Minor #1, a minor child to whom he had access. He stated that he used his LG cellular telephone to record the videos of his sexual abuse of Minor #1 while at his residence located in Colorado Springs, in the District of Colorado. The defendant said the recorded sex abuse occurred on the floor of his bedroom. The defendant further stated that he destroyed his cellular telephone while law enforcement was knocking on the front door during the execution of the search warrant.

The defendant stated he offered Minor #1 money in exchange for making the "sex video". He stated that he had put his penis and fingers into Minor #1's anus during

the video. The defendant also said he licked Minor #1's anus and stated that he ejaculated into Minor #1's anus. The defendant confirmed that Minor #1 told him to stop because it hurt. The defendant confirmed nobody else was present and the conduct occurred two Sundays prior. The defendant stated he engaged in another instance of sexual abuse with Minor #1 prior to the video-recorded sexual abuse; he said he put his penis into Minor #1's anus a few days prior, but did not record it.

The defendant also said he sucked on Minor #1's penis more than five times, but fewer than 10 times while he had access to Minor #1. He stated that on one occasion he moved Minor #1's head towards his penis in an attempt to get Minor #1 to perform oral sex on him. The defendant said that Minor #1 started "screaming and crying", so he stopped and apologized. The defendant stated he was the sole care giver of Minor #1 during each of the occasions he sexually abused and sexually exploited Minor #1. Minor #1 was seven years old when the defendant sexually abused and exploited the minor victim.

The defendant confirmed selling the child sex abuse videos he made to a single individual on the darknet. He confirmed selling five child sex abuse videos of himself and Minor #1 for $40.00. The defendant said he received payment through his Paypal account which was linked to his email address of "DEFENDANT EMAIL ACCOUNT #2". At the end of the interview, the defendant said he had been lying earlier and said he sold the five videos to a second unknown individual for $40.00 in digital currency.

The defendant stated he had searched for and downloaded child pornography files using his LG phone. He said he stored multiple child pornography videos on his

phone's SD card to include videos of baby and toddler rape. He stated he had distributed child pornography videos on anonymous darknet image boards.

During the course of the investigation, HSI special agents and CSPD detectives recovered the defendant's broken LG cellular telephone, adult male clothing matching the clothing worn by the defendant in the videos, and a blue pillow with rainbows which matched the pillow Minor #1 was lying on in the videos. HSI Special Agents and CSPD Detectives also recovered a blue dildo which appears in the child pornography videos.

On May 8, 2020, Minor #1 was forensically interviewed. Minor #1 disclosed the defendant had been "doing gross stuff to me". When asked what Minor #1 meant, Minor #1 said the defendant had been "sucking my privates, he's been doing that a lot, I said no". Minor #1 further disclosed that the defendant stuck his fingers and tongue into his butt and recorded it. Minor #1 then disclosed that LOPEZ "posted it online where people can see and gets lots of money." Minor #1 said the defendant told him not to tell anyone about what happened.

During the course of the computer forensic examination, a total of ten files depicting the sexual exploitation of Minor #1 were recovered from the SD card of LOPEZ's LG cellular telephone, specifically the LG LM-X320MA cellular telephone with IMEI 358335101997409. The phone's SD card was manufactured in China. The files consisted of three image files and seven video files. The metadata associated with the images depicting Minor #1 reflect that they were taken with a device matching the make and model of the defendant's LG cellular telephone. The files names and metadata associated with the images and videos reflect that the files depicting the sexual

exploitation of Minor #1 were taken on April 26, 2020, between approximately 2:00pm and 2:35pm. The mother of Minor #1 has confirmed that the defendant had access to Minor #1 on that date.

Examination of the files on the SD card also reflected the presence of approximately 265 child pornography video files and 20 child pornography image files. The videos and images depict children approximately three years of age and up; most of the videos depict adult males and females engaging in sexual acts with minor females in the age range of three to six years old. Additionally, web browser artifacts located during the computer forensic examination reflected that a folder existed on the SD card that was consistent with installation of the TOR browser application.

Defendant admits that Minor #1 had not attained the age of 12 years at the time of the production offense; the production offense involved the commission of a sexual act; the defendant knowingly engaged in distribution of the child pornography he produced; Minor #1 was in the custody, care, or supervisory control of the defendant at the time of the production offense; and the defendant engaged in a pattern of activity involving prohibited sexual conduct with Minor #1. Further, the defendant admits that the files he transported depicting Minor #1 were child pornography as defined in 18 U.S.C. § 2256(8)(A); the offense involved the use of the Internet to transport child pornography to another individual; the defendant knew the files were child pornography when he transported them; the offense involved distribution for pecuniary gain; the material that was possessed by the defendant depicts the sexual abuse or exploitation of toddlers; the defendant engaged in a pattern of activity involving the sexual abuse or

exploitation of Minor #1; and the defendant used a computer to commit the transportation offense; and the offense involved more than 600 images. The defendant further admits that he was located in the District of Colorado when he produced and transported the child pornography depicting Minor #1.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

**Offense Level for Count One:** The base guideline is § 2G2.1.

The base offense level for Production of Child Pornography is **32**. § 2G2.1(a).

Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels. §2G2.1(b)(1)(A).

Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels. § 2G2.1(b)(2)(A).

Because the offense involved distribution, there is an increase of **+2** levels. § 2G2.1(b)(3).

Because the offense involved a minor who was in the custody, care, or supervisory control of the defendant, there is an increase of **+2** levels. § 2G2.1(b)(5).

Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

Because the defendant is a repeat and dangerous sex offender against minors, there is an increase of **+5** levels. § 4B1.5.

The total adjusted offense level for Count One of the Indictment is **44.**

**Offense Level for Count Three:**  The base guideline is § 2G2.2.

The base offense level for Transportation of Child Pornography is **22.** § 2G2.2(a)(2).

Because the pornographic material involved a prepubescent minor or a minor who had not attained the age of 12, there is an increase of **+2** levels. §2G2.2(b)(2).

Because the offense involved distribution for pecuniary gain, increase by **+5** levels. § 2G2.2(b)(3)(A).

Because the offense involved material that portrays the sexual abuse or exploitation of an infant or toddler, increase by **+4** levels. § 2G2.2(b)(4).

Because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, there is an increase of **+5** levels. § 2G2.2(b)(5).

Because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, there is an increase of **+2** levels. § 2G2.2(b)(6).

Because the offense involved more than 600 images, increase by **+5** levels. § 2G2.2(b)(7)(D).

The adjusted offense level for Count Three is **45**.

Therefore, the Cross Reference in § 2G2.2(c)(1) does not apply since the resulting offense level under § 2G2.1 is less than that determined under § 2G2.2.

Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

The total adjusted offense level for Count Three of the Indictment is **42**.

## Multiple Count Adjustment

Under § 3D1.2, these counts group and there is no increase in offense level. Therefore, the total adjusted offense level for Counts One and Three is **44**.

## Criminal History Category

The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative. Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") II. § 4A1.1.

The career offender adjustment tentatively does not apply. § 4B1.1.

## Guideline Ranges

The guideline range resulting from the estimated offense level of 44 and the estimated criminal history category of II is **life**. The imprisonment range is life from the bottom of CHC I to the top of CHC VI. The guideline range would not exceed, in any case, the statutory maximum of **600** months imprisonment applicable to the count of conviction.

Pursuant to § 5E1.2, assuming the estimated offense level of 44, the fine range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this Plea Agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 8/11/21

GREGORY LOPEZ
Defendant

Date: 8|11|21

David Kraut
Attorney for Defendant

Date: August 11, 2021

Alecia L. Riewerts
Assistant U.S. Attorney